**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **VENA LAFONTANO,** | C.A. No: |
| **Plaintiff,** |  |
| v. | **COMPLAINT** |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC, AND CITIBANK, N.A.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** |  |

Plaintiff, Vena LaFontano, by and through the undersigned counsel, complains, states, alleges, and asserts against defendants Portfolio Recovery Associations, LLC and Citibank, N.A., as follows:

## INTRODUCTION

1.    This action seeks to recover for negligence, substantially assisting violations of the FDCPA, and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").

2.    In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).  At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.*  Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

1

3.    Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*., § 1692(e). After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id*., § 1692k.

4.    In determining whether a collection letter violates the FDCPA, courts in the Third Circuit apply the "least sophisticated consumer standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is an objective one, meaning the specific consumer need not prove that she was actually confused or misled. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

5.    The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

## JURISDICTION AND VENUE

6.    This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

7.    This court has jurisdiction over defendants Portfolio Recovery Associates, LLC and Citibank, N.A. because they regularly conduct and transact business in this state, and are located in this Commonwealth or have sufficient minimum contacts in this Commonwealth.

8.    Venue is proper in this Commonwealth under 28 U.S.C. § 1391(b) because defendants are located in this Commonwealth and a substantial part of the conduct complained of herein occurred in this Commonwealth.

**PARTIES**

9.     Plaintiff Vena LaFontano ("Plaintiff") is an individual who is a citizen of the Commonwealth of Pennsylvania residing in Newtown, Delaware County, Pennsylvania.

10.     Plaintiff is a natural person allegedly obligated to pay a debt.

11.     Plaintiff is a "consumer" as defined by the FDCPA.

12.     Defendant Portfolio Recovery Associates, LLC ("PRA") is a wholly owned subsidiary of publicly traded PRA Group, Inc., a Delaware corporation with a location in Wilmington, Delaware, is one of the largest debt collectors in the United States. PRA's principal place of business is in Norfolk, Virginia. At all times relevant to this Complaint, PRA has transacted business in this District and in the Commonwealth of Pennsylvania.

13.     PRA has transacted business within this Commonwealth as is more fully set forth hereinafter in this Complaint.

14.     PRA regularly collects or attempts to collect debts asserted to be owed to others.

15.     PRA is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

16.     The principal purpose of PRA's business is the collection of such debts.

17.     PRA uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

18.     PRA is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

19.     At all material times herein, PRA's conduct, with respect to the debt complained of below, qualifies as "communication" as defined by 15 U.S.C. § 1692a(2).

20.     Defendant Citibank, N.A. ("Citibank") is a wholly owned subsidiary of Citigroup, Inc. a consumer financial services company headquartered in New York, New York, doing business in the Commonwealth of Pennsylvania, and within this District.

21.     All necessary conditions precedent to the filing of this action occurred or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

22.     In 2014, the New York State Attorney General obtained a settlement against PRA "for repeatedly bringing improper debt collection actions against New York consumers."  The settlement required abandonment of millions of dollars of claims against New York consumers.

23.     PRA was also cited in Human Rights Watch's report "Rubber Stamp Justice," which found that debt buyers rely on "highly questionable information and evidence" to support the accuracy of the debts they purchase.

24.     In September 2015, the CFPB ordered PRA to pay more than $27 million in consumer refunds and penalties for deceptive debt collection tactics that violated the Consumer Financial Protection Act ("CFPA") and the FDCPA.  Specifically, the CFPB found that PRA:

- Threatened and deceived consumers to collect on debts that were inaccurate.
- Collected on unsubstantiated debt.
- Filed misleading affidavits in debt-collection actions.
- Misrepresented that the company had legally enforceable claims to debt when it did not.
- Stated incorrect balances, interest rates, and payment due dates in attempting to collect debts from consumers.
- Failed to provide documentation on debts.
- Filed court cases without documentation to mislead consumers.
- Filed cases on debts that they knew were outside the statute of limitations.

25.     As part of the 2015 Order, PRA was required to adhere to provisions including prohibitions on collecting debts without a reasonable basis, selling debt, threatening, or filing collection lawsuits without an intent to prove the debt, filing false or misleading affidavits in debt-collection actions, making false or misleading representations, and collecting or suing on debt that was outside the statute of limitations.

26.     In April 2023, PRA was found to have violated the 2015 order and was fined an additional $24 million for its continued illegal debt collection practices.  The CFPB noted that, "[a]fter getting caught red-handed in 2015, Portfolio Recovery Associates continued violating the law through intimidation, deception, and illegal debt collection tactics and lawsuits."  Specifically, PRA was continually:

- Misrepresenting the amount or validity of unsubstantiated debt to at least tens of thousands of consumers.
- Sending hundreds of thousands of form letters to consumers threatening to sue consumers on unsubstantiated debts.
- Initiating thousands of legal actions against consumers when it lacked proper documentation about the debt.
- Impeding consumers' efforts to determine whether a debt was truly owed and how they should respond to allegations of outstanding debts.
- Collecting on debt without offering to provide necessary documentation to consumers, or otherwise misrepresented that it would provide the offered documents within thirty days;
- Collecting on time-barred debt without making required disclosures.
- Suing consumers to collect time-barred debt.

27.     During these times, and continuing through today, PRA floods court around the country claiming consumers owe them money.  The tidal wave of lawsuits against consumers by debt purchasers like PRA has not gone unnoticed by state legislatures, and consumer protection agencies.

28.     Citibank had actual notice, or in the alternative, constructive notice, of the

5

foregoing because these and other actions against PRA are a matter of public record.

29. Despite the foregoing, creditors, including Citibank, regularly transfer portfolios of debts purportedly owed by consumers to PRA for purposes of collection.

30. Plaintiff maintained a personal Citibank account.

31. Due to financial difficulties, Plaintiff began to fall behind on payments owed on the Citibank account.

32. Thereafter, Plaintiff retained counsel to assist Plaintiff with the alleged Citibank debt.

33. On September 11, 2025, Plaintiff's attorneys notified Citibank of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Letter of Representation").

34. The Letter of Representation set forth Plaintiff's attorneys' name and address.

35. Creditors, like Citibank, have a pattern and practice of transferring or assigning debts after receipt of letters of representation because Citibank renders the account uncollectible once a consumer retains an attorney or provides a cease and desist.

36. Thereafter, on an exact date known only to Citibank and PRA, the alleged debt was purportedly transferred and/or assigned to PRA for purposes of collection.

37. It is standard practice within the accounts receivable management industry to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

38. It is standard practice in the accounts receivable management industry, when debts are transferred and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

39.     Also, it is standard practice in the accounts receivable management industry, when debts are transferred and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney representation letters and/or cease and desist letters, such as "Cease and Desist Bulk," "C&D-POA," "CD-POA," "CAD," or "DSC."

40.     Further, it is in the interest of public policy when debts are transferred and/or assigned to downstream entities, including debt collectors, for all information to be transferred, including the Letter of Representation.

41.     PRA had actual knowledge of Plaintiff's attorney's representation and Plaintiff's cease and desist.

42.     Further, PRA was also notified by Citibank of Plaintiff's attorneys' representation in the transfer file(s) or the transfer file name included a notation which informed PRA that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

43.     PRA was notified by Citibank of the Letter of Representation in the account level documentation.

44.     PRA was notified by Citibank of the cease and desist in the transfer file(s) or the transfer file name included a notation which informed PRA that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

45.     PRA asserts it is the current creditor of the alleged debt; therefore, PRA would have received all material information and documentation regarding the account, including the Letter of Representation.

46. However, Citibank has the right to recall or repurchase Citibank accounts from the debt collectors it transfers and/or assigns Citibank accounts to.

47. Despite the Letter of Representation, in an attempt to collect the alleged debt, PRA sent Plaintiff a letter on behalf of the Defendants, dated February 24, 2026 (the "February Letter") directly to Plaintiff.

48. The February Letter was received and read by Plaintiff.

49. Plaintiff's attorney did not consent to Defendants direct communication with Plaintiff.

50. Defendants did not send the February Letter to Plaintiff's attorney.

51. Defendants had actual notice of the Letter of Representation.

52. Plaintiff spent time to send the February Letter to her attorneys.

53. The February Letter demanded payment in the amount of $5,831.85.

54. The February Letter alleged that Plaintiff no longer owed money to Citibank, but now owed the alleged debt to PRA.

55. However, Plaintiff was never involved in any transaction with PRA for $5,831.85 and never entered into any contract with PRA for the payment of $5,831.85. Plaintiff was never indebted to PRA, and was never indebted to PRA for $5,831.85. PRA never extended credit to Plaintiff for $5,831.85. PRA does not possess competent proof that Plaintiff owes $5,831.85 to PRA. PRA holds no legal right, title, or interest in $5,831.85 owed by Plaintiff.

56. Citibank is liable for the conduct of the debt collectors it retains for purposes of collection or transfers accounts to for purposes of collection.

57. The acts of Defendants as described in this Complaint were performed by Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting

within the scope of their actual or apparent authority.  As such, all references to PRA in this Complaint shall mean PRA or their owners, officers, agents, and/or employees. As such, all references to Citibank in this Complaint shall mean Citibank or their owners, officers, agents, and/or employees.

58.    Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

59.    Plaintiff has the right to live without being subject to false claims from PRA. Plaintiff has the right to be free from invasions into her privacy and intrusions upon her solitude and seclusion. Plaintiff has the right to be free from harassing, annoying, oppressive, and abusive conduct. Defendants infringed upon Plaintiff's rights, causing Plaintiff concern, worry, loss of time, emotional distress, and economic harm.

60.    As a result of Defendants' conduct, Plaintiff suffered an intrusion into Plaintiff's right to solitude and seclusion.

61.    As a result of Defendants' conduct, Plaintiff suffered an intrusion into Plaintiff's right to quiet enjoyment of life.

62.    As a result of Defendants' conduct, Plaintiff suffered an intrusion into Plaintiff's attorney-client relationship.

63.    As a result of Defendants' conduct, Plaintiff began to question and lose faith in Plaintiff's attorney-client relationship.

64.    As a result of Defendants' conduct, Plaintiff has suffered inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

65. Plaintiff's injury-in-fact is traceable to the actions or inactions of defendants PRA and Citibank.

66. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**FIRST COUNT**
**Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f**

67. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

68. The Plaintiff is a "consumer" as that term defined by the FDCPA.

69. PRA is a "debt collector" as that term is defined by the FDCPA.

70. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

71. The February Letter is a "communication" as that term is defined by the FDCPA.

72. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

73. 15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

74. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

75. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

76. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

77. 15 U.S.C. § 1692f prohibits a debt collector from using unfair or unconscionable mean in an attempt to collect a debt.

78. An allegation by a debt collector that a consumer owes a debt to a certain entity

when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f.

79.     An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not that amount is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

80.     As previously stated in this Complaint, Plaintiff did not owe the amount the February Letter alleged is owed to PRA by Plaintiff.

81.     The contention that Plaintiff owed the alleged debt to PRA, when Plaintiff did not owe the alleged debt to PRA, amounts to conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

82.     The contention that Plaintiff owed the alleged debt to PRA, when Plaintiff did not owe the alleged debt to PRA, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

83.     The contention that Plaintiff owed the alleged debt to PRA, when Plaintiff did not owe the alleged debt to PRA, is a false representation of the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A).

84.     The contention that Plaintiff owed the alleged debt to PRA, when Plaintiff did not owe the alleged debt to PRA, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10).

85.     The contention that Plaintiff owed the alleged debt to PRA, when Plaintiff did not owe the alleged debt to PRA, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692f.

86. For the foregoing reasons, PRA violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f, and is liable to Plaintiff therefor.

**SECOND COUNT**
**Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)**

87. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

88. The Plaintiff is a "consumer" as that term defined by the FDCPA.

89. PRA is a "debt collector" as that term is defined by the FDCPA.

90. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

91. The February Letter is a "communication" as that term is defined by the FDCPA.

92. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

93. 15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

94. As described herein, PRA violated 15 U.S.C. § 1692c(a)(2).

95. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

96. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

97. PRA invaded Plaintiff's privacy.

98. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection

12

with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

99.    15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

100.    As described herein, PRA violated 15 U.S.C. § 1692c(c).

101.    A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

102.    A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

103.    PRA intruded upon Plaintiff's rights to solitude and seclusion.

104.    A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

105.    A violation of Section 1692c(c) is an interference with the attorney-client relationship.

106.    PRA interfered with Plaintiff's and her attorney's attorney-client relationship.

107.    For the foregoing reasons, PRA violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c), and is liable to Plaintiff therefor.

## THIRD COUNT
## NEGLIGENCE

108.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

109.    Creditors owe a duty of care only to their own customers.

110.    Creditors owe their own customers a duty of reasonable care in the collection of debts.

111.    Citibank owed a duty to Plaintiff as a customer of Citibank.

13

112. Citibank owed a duty to Plaintiff to exercise reasonable care in its attempts to collect money from Plaintiff.

113. Citibank owed a duty to Plaintiff to exercise reasonable care in the transfer of Plaintiff's account to PRA.

114. Citibank owed a duty to Plaintiff not to transfer Plaintiff's account to a debt collector that engages in unfair and deceptive acts and practices when attempting to collect debts.

115. Citibank breached these duties by transferring Plaintiff's account to PRA without any regard for the unfair and deceptive acts and practices that PRA engages in.

116. Citibank had actual knowledge, or in the alternative, constructive knowledge, of the unfair and deceptive acts and practices that PRA engages in via public records and the control Citibank exercises over PRA regarding the accounts Citibank transfers to PRA. Examples include: requiring reporting to Citibank, auditing PRA, setting policies and procedures, and having the ability to recall accounts.

117. As a direct and proximate result of Citibank's negligence, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

### FOURTH COUNT
### Substantially Assisting Violations of the FDCPA: Transfer of a Debt to a Debt Collector

118. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

119. Citibank transfers pools of consumer debts to PRA for purposes of collection.

120. Citibank participates in the placing and transfer of consumer debt portfolios and has the authority to control the transfers.

121. Citibank exercises control over PRA regarding the accounts Citibank transfers to PRA by requiring reporting to Citibank, auditing PRA, setting policies and procedures, and having the ability to recall accounts.

122.    Citibank knows or should know that PRA engages in unfair and deceptive acts and practices by threatening consumers with impending lawsuits.

123.    Citibank knows or should know that PRA engages in unfair and deceptive acts and practices by filing frivolous collection lawsuits.

124.    Citibank knows or should know that PRA engages in unfair and deceptive acts and practices by engaging in misleading, deceptive, harassing, abusive, oppressive, unfair, and/or unconscionable conduct.

125.    Citibank and PRA engage in these practices to harass, oppress, or abuse consumers.

126.    Citibank and PRA engage in these practices to coerce consumers into paying debts because consumers are desperately trying to increase their credit scores.

127.    Citibank knowingly or recklessly assisted PRA in PRA's deceptive acts and practices.

128.    As a direct and proximate result of Citibank's conduct, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## JURY DEMAND

129.    Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereto respectfully requests judgment be entered:

a.    Finding PRA's actions violate the FDCPA; and
b.    Damages against PRA, pursuant to 15 U.S.C. § 1692k; and
c.    Reasonable attorneys' fees awarded against PRA, pursuant to 15 U.S.C. § 1692k; and
d.    Actual, treble, exemplary, and punitive damages on Plaintiff's negligence causes of action against Citibank; and
e.    Actual, treble, exemplary, and punitive damages on Plaintiff's Substantially Assisting Violations of the FDCPA causes of action against Citibank; and
f.    The costs incurred in this action; and

15

g.  Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

h.  Such other and further relief that the Court determines is just and proper.

Dated: May 19, 2026

Respectfully Submitted,

*/s/ Antranig Garibian*

**Antranig Garibian, Esquire**
Garibian Law Offices, P.C.
261 Old York Road, Unit 427
Jenkintown, PA 19046
*Counsel for Plaintiff*

16